Alright, our final case this morning is number 251218 TJTM Technologies v. Google. Okay, Mr. Kittle. Good morning, your honors. Blair Kittle on behalf of TJTM Technologies. May it please the court. This court should reverse the district court's decision because the 853 patent addresses a technological problem that in general, cell phones have been designed to attract attention through alerts, notifications, signals, and prior to the issuance of the patent, did so even when brought into a motor vehicle when the driver should have been focusing on the road. Recognizing this problem, the inventor of the 853 patent sought to improve cell phone technology by expressing a system that involves state-of-the-art graphical interfaces, the mechanical and physical positioning of both the phone in connection with the vehicle, described in the specific technological context of how cell phones are used and designed at the time. You say it's a technical solution to a technical problem. Google says this could hardly be a more human-centered problem that predates cell phones and could be solved by using a lot of people. How do I decide if it's in fact a technical solution, a technical problem, or something else? I think the thing to look at is what actually is the problem and how best to describe it. Here, I think that Google's description of the problem is, the description is a behavioral problem. It's a behavioral problem of people get distracted. I think here, the way we view this is that cell phones have enabled these types of messages to be delivered to people anywhere as they go. That's sort of the entire point of a cell phone. And that the designers of cell phones have created distractions which distract people to bring their attention to the device in a way that is separate from the actual message itself. Because certainly, messages have distracting qualities to them. Certainly, if I got a message that said I've been evicted from my place of residence, that would distract me. That is a separate quality to the distractions that are provided by the technology itself. Where's the technical solution? It just says block this out. It doesn't tell you how to do it. It doesn't tell you how to program the phone to do it, right? The patent itself does not tell the user exactly how to do it. Well, I think that it describes a flexible solution which is applicable to the types of technology that was available. It describes a result. In some ways, of course, it's required to describe a result. But it actually does describe the technical steps by which that occurs, which, as I said, involves both the physical positioning of the device as well as the specific parts of the device, and relies upon the level of technology that the devices this patent is interfacing with arrive at at the time. So, for example, the graphical user interface is not an inherent feature of a cellular telephone. Car phones prior to that wouldn't have graphical user interfaces. It could have purely mechanical interfaces. It says a memory, including instructions that, when executed, do this. It doesn't tell you what the steps are. I think I would have to agree with you on your honor there. It says what it says. Yes, sir. I'm sorry. Are you contesting that whether mobile phones have graphical user interfaces? Well, I think that it is not an inherent… As of 2013? So, as of 2013, they most likely did, yes. I'm not contesting that feature of it. But that is a description of the totality of where this technology was at the time, is that the graphical user interface is inherent to it being able to save the away message, which is a feature we haven't discussed yet as well, that is not just in relation to suppressing the notifications rather than the incoming messages. The sending the away message performs an additional function, which we also described in our briefing that it provides, for example, a log to law enforcement of somebody who was pulling over a motorist, that they were, in fact, not using their device during the time in which it was connected to the vehicle and in this function. That's one potential feature that it also supports. So I'm not contesting that it has… The away message, are you suggesting that's a technological solution to a technological problem? I mean, I thought it was pretty darn conventional that when someone doesn't pick up the phone, there's going to be an away message. Well, Your Honor, I think that that's not entirely true, and I think that in the context of cell phones and the advent of people carrying them, there has become an expectation that people are more available and that the absence of a response from someone over time sending a message to them can mean different things in that social context. So what I mean here is, for example, I'll tell you a story about a practitioner I dealt with at a law firm. The mail came once a day, and so the expectation was that the response was you would get at maximum one response a day to physical mail being delivered. With the advent of cell phones, cell phone technology, and the improvement of the same, the expectation of responsiveness has increased. So the technological problem of the expectation, the social expectation, that people are more available is actually improved upon by this patent in that the people who might be communicating with you are— My kids never pick up my calls. Well, certainly the social context for everyone is different and that your kids may have different expectations with you than, for example, someone in a professional services business relationship might have a particular expectation of response. This patent provided the flexibility to provide that automatically using a technological solution to everyone, regardless of their individual social expectation with the people who may be communicating with them. As I understand the procedure here, there was an original complaint. District Court dismissed the original complaint, saying it would be futile to amend with respect to step one, but you could try again with respect to step two. You don't appeal that finding of futility with respect to step one, correct? I think we are appealing the entirety of the court's dismissal. I think that we do think it was not futile on step one. To the extent you added anything, and I don't know if you did it, but added anything relevant to step one in your amended complaint, it seems to me that that was inconsistent with what the District Court allowed you to do, and I didn't see any appeal of her limitation that you're stuck with what you alleged with respect to step one in your original complaint. Am I wrong about that? I think Google made this point in their briefing as well. Our brief provides our citations that we believe that that's incorrect and that the proper procedure would have been for Google to move to strike, but in terms of what we appealed, I think that you're correct, Your Honor. What do you think that you added with respect to step two that was materially different in your amended complaint than was already in your complaint? What we added with regard to step two was additional description of what the device is actually capable of performing in this context. So we added, for example, an expert's declaration to describe the historical situation and how this technology functioned. I didn't see anywhere where your expert said even your five steps, suppose it ordered combination, was unconventional, non-routine, not well understood. Did your expert even provide that opinion? I don't think the expert provided that exact opinion, Your Honor, no. He provided what was in his report. Do you think the Northern District of Illinois decision, ATOS, was correctly decided or incorrectly decided? Your Honor, it was ATOS. If you could assist me with the specific facts of that one. When the phone detects the car is moving, then the phone automatically goes silent. Right. So that was specifically addressing that that concept of just the connection with a car and detecting the connection of the car as the only feature might be an abstract concept. I don't think that that one was necessarily incorrectly decided. I think that this patent combines additional features, which make it not an abstract concept. Is it the pairing of the phone to the car? The pairing is one part of it, yes. But you're not arguing that your inventor invented pairing a phone to a car.  We are not arguing that that alone is the thing that made this patent new. And it's not clear to me that pairing is even necessarily part of the claim because the claim is just for the phone. And then the claim limitation says in response to pairing, then make the phone go inactive. So it sets up perhaps a timing element, but it's not clear to me that pairing per se is a limitation in the claim. I think that's generally correct, Your Honor, in that it was contemplating that the methods of pairing were already in existence and that this phone would be able to utilize those in a variety of contexts, the ways that it might be able to pair with a car. It might use different technologies, Bluetooth, maybe a physical connection. Having said all that, in one sentence, can you just describe the inventive concept here in this claim? Yeah. In one sentence, the inventive concept is that it prevents the distractions that the phone generates automatically upon pairing with the car using the technology that exists at the time. With any other questions, I think I'll reserve my time for rebuttal. Okay. Thank you, Your Honor. Mr. Teets. Good morning, Your Honors. May it please the Court. Jonathan Teets for Google, joined by Dan Bagatelle. This is a pre-ALICE specification, and like many pre-ALICE and pre-NFISH specifications, the whole specification describes the invention in a purely functional way. And so the claims reflect that, and in that sense, use result-oriented functional language. Now I want to respond to a couple things that my friend on the other side just brought up. One of them is, suppose it's physical or mechanical positioning aspects or legal protection aspects that are described in the specification. That can't help because they are not reflected in the claims, and they are not claimed here. They might be in another embodiment, but not in this one. The mobile graphical interface point, too, in addition to being new on appeal, there's no sense in which that would be a technological solution to a technical problem. On the procedural point that Judge Stark, you asked about, regarding futility at Step 1, one thing I should note in response to counsel's argument that that was still open, at Appendix 188 in Google's reply below to the first motion to dismiss, we pointed out that TJTM had raised the prospect of submitting a declaration on the Step 1 issue to address the technological problem. So that was something that was before the district court, and then she squarely found futility at Step 1. As to why Google didn't move to strike, the problem wasn't that particular facts couldn't be pleaded. It was just what the proper record is for a question that had been previously decided. So we're not saying that they couldn't say whatever they wanted to say in their complaint. We're just arguing what the legal significance of that is. As to facts that were added at Step 2 by their expert, the expert focused on two things. One was just convenience, while admitting that the screening steps and method could already be performed. And the other was a focus on unclaimed features that haven't been raised on appeal, and that's this combination of two different transmitters and a certification server. If the court has no further questions. I have a couple. Today, at least, the one-sentence characterization of the inventive concept is something, if I caught this, to the effect of it prevents distracted driving to the extent that distracted driving is created by the mobile device itself using, I think, admittedly conventional technology, but presumably in a way that was not well-understood routine and conventional at the time. Why is there not at least a fact dispute about that inventive concept as so articulated? Two reasons, Your Honor. So setting aside any forfeiture issue or failure to raise that, this goes to the point that inventive concept at Step 2 can't result from use of the abstract idea in a generic way. It has to be something significantly more than that. And so even in a specific environment, the abstract idea employed generically might provide a benefit. That's not an inventive concept from an ALICE standpoint. That might go more to utility. All right. And on the, I suppose, high-level starting point here where they say ALICE is not a problem for them because this is a technical solution to a technical problem, and you say no it isn't, is that a question of law? Is it a question of fact? And how do I answer whether this really is a technical solution, technical problem type case? That's a question of law. And what that goes to is what the solution is. And a solution can be technical involving specific structural features that change the operation of a device, or it can be the mere automation with conventional features of a longstanding concept. And so that's the dividing line at Step 1. Step 2 then is just whether there is something beyond putting those conventional features to apply an abstract idea in a particular environment, whether it is some combination of limitations or limitation to claim that goes beyond that. So I think it's the nature of the solution itself and whether it just involves existing functionality to address an abstract idea. Is it possible that there is some kind of technical-based means here for getting to this good result of automatically turning off a phone while you're in the car because you're relying on this pairing ability. And now you're harnessing that pre-existing technical pairing feature in a way that hadn't been done before to achieve something that hadn't been done before, which is to automatically silence your phone. I mean, automatically silencing your phone could sound technical, and using pairing sounds technical, and that's the means to trigger the silencing. So maybe we have a technical means to getting to a technical outcome, which is silencing the phone. So those things are only technical in the sense that they happen on a phone. They're not technical in the sense that they're conventional functions of the phone and that they also map to what would happen in the offline analogy of, for instance, an assistant or a spouse riding in the car who silences your phone when you get in there and then unsilences the phone when you get to the rest stop on the Pennsylvania Turnpike, for instance. We don't need the wife in this invention. Well, that's a change in the user experience. I would not say that's an improvement in the user experience, but that's a change in the user experience that results from the inherent application of the abstract idea through conventional technology, and that doesn't cut it under Alice. So there certainly could be a case in which some aspect of that pairing process or the automatic initiation process did something a phone couldn't do before, like maybe there was some roadblock inside a phone's features that it wouldn't let you auto-silence something for some reason, and some inventors fixed that. This preempts any kind of innovation like that, and this just says, what you would have had a human do, just do it automatically, we don't care how. Without telling you how to do it automatically? No. Other than using conventional technology? Just automatically initiating a process, and the rest is left as an exercise to the reader. Okay. Thank you. Mr. Kittle? Thank you, Your Honors. Just a few quick points. I'd like to address the physical positioning piece. I think the physical positioning, the relation of the phone to the car, is simply a logically inherently necessary understanding of how this works, and therefore is part of it. I think I'd also like to address the idea that this patent simply takes over the function of what a human could do. I think the main point to bring up here is the concept of negative action versus positive action, and that a human could perhaps perform the function of silencing the device, putting the device in a location where it's not going to actually provide the kind of vibrational or visual distraction to the driver of the car as well. Those are things that a human could do with the device. However, in terms of how this is described as a technological solution to a technological problem, is it's not the silencing of the device necessarily that is the technological problem. It's the device itself that is creating the distractions that then requires addressing. So it is the device itself that has created the problem that needs solving, whereas appealing to the abstract concept that Google tries to describe this whole situation as simply suppressing messages. Messages don't inherently have vibration. Messages don't inherently have visual cues. Messages don't necessarily have auditory cues, all specifically designed in a physical device to present to you. This is the point I was trying to make about how messages have inherent interest, distractional qualities, but it's the technological qualities of the distraction of these messages which is creating the problem in a driving context, is that humans are unable to avoid the distractions that have been specifically designed into these devices. And it's this patent that specifically addresses that concept and provides a technological solution to a problem that the devices are creating, which humans weren't creating that problem. That's not where we're coming from on this. Okay. Anything further? No, Your Honor. Okay. Thank you. Thank both counsel.